IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00349-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. MICHAEL STEPHEN YOUNG,

        Defendant,

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States of America, by and through Pegeen D. Rhyne, Assistant United States Attorney for the United States Attorney's Office for the District of Colorado (the "government"), and the defendant, Michael Stephen Young ("Young" or the "defendant"), personally and by counsel, Fredric Winocur and Brian Leedy, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I.   AGREEMENT

1. The defendant agrees to plead guilty to a single-count Information, charging him with making a false statement, in violation of 18 U.S.C. § 1001.

2. The defendant agrees to pay the $100 special monetary assessment applicable to this count at or before the time of sentencing.

3. The defendant agrees that a sentence within the guideline range of 10 to

16 months is reasonable, and the defendant agrees not to argue for, or request, a sentence below that range.

4. The defendant agrees to give his complete cooperation during the investigation and prosecution of any criminal charges, including, but not limited to, meeting with government investigators or prosecutors at reasonable times and as often as they deem necessary, appearing voluntarily and providing truthful testimony at any hearing or trial proceeding when requested, providing investigators with his current address and phone number until any related proceedings are concluded, and providing documents or items within his possession or control when requested.

5. The government agrees that any information and testimony given by the defendant pursuant to this agreement will not be used against him, either directly or indirectly, in any criminal case except for prosecutions for perjury, making a false statement, or obstruction of justice, or for impeachment. Information and testimony will not be used against the defendant pursuant to Section 1B1.8 of the Sentencing Guidelines. Any information and testimony relating to the defendant's involvement in crimes of violence, based on the common law definition of that term, is excluded from this agreement.

6. The defendant agrees that if the government can show that he lied or attempted to mislead the government or law enforcement authorities, or if he does not fulfill the terms of or does not complete his cooperation under this agreement, he is in breach of this plea agreement, and (a) any information or testimony which he has given in connection with this case can be used in any prosecution against him, notwithstanding the provisions above, and (b) the government reserves the right to

prosecute him for perjury or false statement, to withdraw its agreement in this case, and to bring any additional charges, including those that the government agreed to dismiss in connection with this plea agreement.  If the government alleges such conduct, it will have the burden of establishing the alleged conduct at a separate hearing by a preponderance of the evidence.

7. Provided that the defendant cooperates fully and truthfully with the government as described above, as determined in the government's sole discretion, the government agrees that: (a) it will recommend a sentence within the guideline range of 10 to 16 months; and (b) it will not to bring any additional criminal charges against the defendant based on the conduct currently known to the government.  No other consideration will be given for the defendant's cooperation, and the government will **not** be filing a motion pursuant to Section 5K1.1 of the United States Sentencing Guidelines in order to seek a sentence below the guideline range of 10 to 16 months.

8. The defendant agrees that this plea agreement shall toll the statute of limitations relating to any offense conduct currently known to the government and that he will not raise a defense based on the statute of limitations for any additional charges brought by the government against the defendant if the defendant fails to fully and truthfully cooperate with the government as described above.

9. The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  Understanding this, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria:  (1) the sentence imposed is above the maximum penalty provided in the statute of conviction,

(2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly, or (3) the Court determines that the total offense level, after the 2-level reduction for acceptance of responsibility, is higher than 12 and imposes a sentence above the sentencing guideline range calculated for that total offense level. Except as provided above, the defendant also knowingly and voluntarily waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742. The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim that the defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

10. This plea agreement is made pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure.

## II. ELEMENTS OF THE OFFENSE

11. The parties agree that the elements of the making a false statement offense charged in the Information to which this plea is being tendered are as follows:

    A. The defendant made a false, fictitious, or fraudulent statement or representation to the government as described in the Information;

    B. The defendant made the statement or representation knowing that

        it was false;

    C.    The defendant made the statement or representation willfully, that is knowing that his conduct was unlawful;

    D.    The statement or representation was made in a matter within the jurisdiction of the executive branch of the United States; and

    E.    The statement or representation was material to the United States Securities and Exchange Commission.[1]

### III. STATUTORY PENALTIES

12. The maximum statutory penalty for a violation of 18 U.S.C. § 1001 is: not more than 5 years of imprisonment, a fine of not more than the greater of $250,000, or both; not more than 3 years of supervised release; and a $100 special assessment fee.

13. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### IV. COLLATERAL CONSEQUENCES

14. The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V. STIPULATION OF FACTS

15. The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below.

---

[1] Tenth Circuit Pattern Jury Instructions (Criminal Cases), 2011, § 2.46.1 (updated 2018) (revised to reflect DOJ's interpretation of "willfully" as requiring knowledge that conduct was unlawful.).

Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

16. This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

17. The parties agree that the date on which relevant conduct began is in the month of April 2019.

18. The parties agree as follows:

From early 2015 through September 2019, defendant Young and his partner M.S. owned and operated a company called Mediatrix Capital, Inc. ("Mediatrix Capital"). In 2016, an additional partner, B.S., joined Mediatrix Capital.  In documents provided to potential investors in 2015, defendant Young and M.S. claimed that Mediatrix Capital was "an industry leading independent Trading Advisor of Foreign Currency FX Spot and OTC FX Options."  In these documents, defendant Young and M.S. further claimed that Mediatrix Capital's "trading and management team is composed of some of the best, most respected FX Spot and FX OTC Options strategists currently working in the industry."  Defendant Young and M.S. further claimed that Mediatrix Capital's business model made "superior consistent profits for its clients and allow[ed] dependable,

6

monthly returns that most firms only hope for in any single year's time."

In 2015, defendant Young had primary responsibility at Mediatrix Capital for raising funds from investors, and M.S. had primary responsibility for trading investor funds in the Foreign Exchange Market. In 2015, through Mediatrix Capital, defendant Young raised more than $500,000 in investor funds from at least seven investors for the purpose of trading that money in the Foreign Exchange Market. Immediately, after placing these investor funds in trade in the Foreign Exchange Market, Mediatrix Capital began losing these investor funds in that market. By the end of 2015, Mediatrix Capital had lost all or the vast majority of these investor funds due to poor trade results.

In March 2019, defendant Young was subpoenaed by the United States Securities and Exchange Commission ("SEC") to provide sworn testimony regarding the SEC's investigation of Mediatrx Capital. Prior to his testimony, the SEC sent defendant Young an information sheet (SEC Form 1662) that contained the following admonishment at the top of the document:

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully –
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

On April 10, 2019, in Denver, Colorado, defendant Young provided testimony

under oath to representatives of the SEC.   At the beginning of his testimony, a representative from the SEC confirmed that defendant Young had received and reviewed SEC Form 1662.   During his testimony, defendant Young knowingly and intentionally made a false statement in response to a question posed by a representative of the SEC, specifically:

- SEC Question: "When was the first time that Mediatrix Capital in any format raised funds from an investor?"
- Defendant YOUNG's false answer: "Would have been first quarter of two thousand – well outside of Mr. S[.] and his – the marines that he – okay.   It would have been first quarter of 2016."

Defendant Young's answer was a false statement because, as defendant Young then and there knew, Mediatrix Capital raised more than $500,000 in funds from investors in 2015 and quickly lost all or the vast majority of those investor funds by unsuccessfully trading it in the Foreign Exchange Market.   At the time of his testimony, defendant Young knew that knowingly and intentionally making a false statement during his testimony to the SEC was unlawful because: (1) the notice that the SEC sent him that is set forth above advised him that it was unlawful; and (2) he was placed under oath at the beginning of his testimony and he knew that lying under oath was unlawful. Defendant Young's false statement was within the jurisdiction of the SEC because the SEC's mission is to protect investors from, among other things, fraudulent securities investment offerings.   Defendant Young's false statement was also material to the SEC because the SEC investigation included Mediatrix Capital's use of false statements to obtain investor funds for the purpose of trading those funds.   Two of the false

statements that the SEC was investigating were Mediatrix Capital's claim that (1) it had a history of success and (2) from 2013 through at least late 2018, it had never had a losing month in the Foreign Exchange Market. The fact that Mediatrix Capital had raised from investors, and lost, approximately $500,000 in 2015 was material to the SEC's investigation of those claims. The SEC is an agency within the executive branch of the Government of the United States.

At the time of Mr. Young's April 10, 2019, testimony, a criminal investigation relating to Mediatrix Capital had not yet been initiated.

### VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

19. The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies in bold the matters which are in dispute, if any.

    A.    The base guideline is § 2J1.3,[2] with a base offense level of 14.

    B.    The defendant should receive a 2-level downward adjustment for

---

[2] Section 2J1.3 is applied as a result of the Cross Reference provision under Section 2B1.1(c)(3). The parties stipulate and agree that no further specific offense characteristics or cross references apply.

        timely acceptance of responsibility.   The resulting offense level would be 12.

    C.    The parties understand that the defendant's criminal history computation is tentative.   The criminal history category is determined by the Court based on the defendant's prior convictions.  Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I.

    D.    The career offender/criminal livelihood/armed career criminal adjustments would not apply.

    E.    The advisory guideline range resulting from these calculations is 10-16 months.   However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 10 months (bottom of Category I) to 37 months (top of Category VI).   The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

    I.    Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $5,500 to $55,000, plus applicable interest and penalties.

    J.    Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 1 year, but not more than 3 years.

20.    The parties understand that although the Court will consider the parties'

estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

21. No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

22. The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.   ENTIRE AGREEMENT

22.   This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

| | |
|---|---|
| 1/5/21 | *[signature]* |
| Date | MICHAEL STEPHEN YOUNG<br>Defendant |
| 1/5/21 | *Brian Leedy* |
| Date | FREDRIC WINOCUR<br>BRIAN LEEDY<br>Attorney for Defendant YOUNG |
| 11/20/2020 | *[signature]* |
| Date | PEGEEN D. RHYNE<br>Assistant U.S. Attorney |